**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| Rose Jenkins, individually and on behalf of all others similarly situated, | 1:23-cv-00320 |
| Plaintiff, | Resident of Wicomico County |
| - against - | Class Action Complaint |
| Instant Brands LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Instant Brands LLC ("Defendant") manufactures, packages, labels, markets, and sells tempered glass and ceramic kitchenware under the Pyrex brand ("Product").

 

2. The origins of Pyrex are in the hamlet of Corning, New York, at the turn of the twentieth century.

3. A small company known as Corning Glass Works developed a borosilicate glass called "Nonex" based on the battery jars and railroad lanterns of the era, which could withstand extreme temperatures without breaking.

4. After World War Two, Corning's innovations "drove patriotic and budget-conscious homemakers to the American-made, affordable kitchenware."

5. Pyrex items are "regularly handed down from one generation of home cooks to the next," and "[are] sentimentally linked to sweet memories of baking with Grandma."

6. One essayist noted that "Perhaps you grew up eating casseroles out of a classic Pyrex glass dish. Maybe you were given a set of Pyrex food storage containers when you moved into your first apartment or home. Or maybe, to this day, you regularly use a Pyrex glass measuring cup when whipping up your baked goods."

7. That "many remember these from their childhood makes Pyrex a nostalgic item that brings people joy."

8. In fact, anthropologists have described "cooking utensils [like Pyrex products] as 'inalienable possessions' that embody individual and family memories."[1]

9. Since "[they] are both given and kept, [] they 'come to be storehouses of memories which help tell stories of people's lives.'"

10. These "[everyday] object[s] [] had [their] own history and life which was in turn inextricably wound together with the history and life of its owner – and, often, older generations."

11. Through the quality of their products, coupled with their unique designs, Pyrex products are iconic consumer goods and staples of American kitchens for generations.

12. Pyrex capitalizes on these memories and associations, noting that its products "ha[ve] a place in our hearts and homes for over 100 years … passed down from generation to generation."

---

[1] Erin Blakemore  Why We Keep Our Utensils, Nov. 25, 2015.



Born of innovation, the iconic Pyrex brand evokes some of our fondest family food memories, and has had a place in our hearts and homes for over 100 years. Pyrex glassware—made for both purpose and passion—has been passed down from generation to generation, and for good reason. And our new Pyrex products, designed specifically for the ways we make and share food today, will be loved for years to come.

13. That Pyrex items are quintessential Americana owes in part to its history of being made entirely in the United States.

14. Pyrex promotes this attribute across its range of items, from measuring cups to ceramic dishes, stating that it "value[s] [its] made in the USA heritage



3

15. At a time when most products used by Americans are made in other countries, Pyrex's YouTube page promotes that it is "1 of 10 'products surprisingly still made in America.'"



16. In other marketing, Pyrex describes its products as "American as apple pie," because it is "proudly made in the U.S.A."



17. However, owing to an increase in demand for kitchenware during the Coronavirus pandemic, domestic supply of Pyrex was insufficient in part due to stay-at-home orders issued in many states.

4

18. The result was that several Pyrex products began to be made in China, the country many have identified as where the deadly SARS Covid-19 virus originated.[2]

19. Instead of informing American customers of this fact, Defendant continued to advertise several of its iconic measuring cup sets as "Made in the USA" through retailers including Amazon.com.

**About this item**
- Includes 1-cup, 2-cup, 4-cup and 8-cup versions
- Easy to read measurements in cups, ounces and milliliters. Features a curved spout for precise pouring and easy-grip handles for comfort
- Durable high-quality tempered glass is dishwasher, freezer, microwave and preheated oven safe
- Nonporous glass won't absorb food odors, flavors, or stains
- BPA free secure-fit plastic lids are freezer, microwave and top-rack dishwasher safe
- 2-year limited warranty on glass and plastic lids
- Made in the USA

20. Though there are reports that several dozen customers complained to Pyrex about its continued claims to be made in America, this number paled in comparison to the tens of thousands who bought over 110,000 of these items.

21. At no point during this time did the unqualified "Made in USA" claims across various forms of media cease.

22. The Chinse-origin Pyrex products contained a small print statement that it was node "Made in USA" but "Made in China."

23. American consumers value buying products which are made in America.

24. The Federal Trade Commission ("FTC") defined "Made in the United States," and its synonyms, such as "Made in the U.S.A." to mean any unqualified representation, express or

---

[2] Carl Zimmer and Benjamin Mueller, New Research Points to Wuhan Market as Pandemic Origin, N.Y. Times, Feb. 27, 2022.

implied, that a product and the raw materials used in its manufacture, are of U.S. origin. 16 C.F.R. § 323.1(a).

25. Based on the FTC standard, it was misleading to promote the Pyrex products as "Made in the USA" because (1) none of their final assembly or processing occurred domestically, (2) all significant processing and manufacture took place in China and (3) all or virtually all of their components were made and sourced outside the United States. 16 C.F.R. § 323.2.

26. While studies show that more than half of consumers are misled by unqualified "Made in U.S.A." claims on products containing components originating outside the United States, all consumers were misled by Pyrex's "Made in the USA" claims where the materials originated outside this country and the items were made entirely in China.

## Jurisdiction and Venue

27. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

28. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

29. Plaintiff is a citizen of Maryland.

30. Defendant is a citizen of Delaware and Illinois based on the citizenship of its sole member.

31. The class of persons Plaintiff seek to represent includes persons who are citizens of different states from which Defendant is a citizen.

32. The members of the classes Plaintiff seek to represent are more than 100, because over 100,000 items were sold that were promoted as "Made in the USA" across the States covered by the proposed classes, and hundreds of thousands of persons purchased other Pyrex products

6

based in part on the company's claims that all of its items were made domestically from domestic components.

33. Venue is in this District with assignment to the Northern Division because a substantial part of the events or omissions giving rise to the claims occurred in Wicomico County, including Plaintiff's purchase of Pyrex products, exposure to and reliance on the representations and omissions, and/or subsequent awareness they were false and misleading as to the specific Pyrex products and/or about the Pyrex product line in general.

### Parties

34. Plaintiff Rose Jenkins is a citizen of Salisbury, Wicomico County, Maryland.

35. Defendant Instant Brands LLC is a Delaware limited liability company with a principal place of business in Downers Grove, Illinois, DuPage County.

36. The sole member of Defendant is Instant Brands Holdings Inc., a Delaware corporation with a principal place of business in Downers Grove, Illinois, DuPage County.

37. Plaintiff purchased various Pyrex products within the statutes of limitations for each cause of action alleged, among other times.

38. One of the significant reasons Plaintiff purchased Pyrex products was because she believed all of their products were "Made in the USA," based on its ubiquitous promotions and advertising campaigns over decades.

39. Plaintiff believed that all Pyrex products were made entirely in the United States and consisted of raw materials sourced and transformed domestically.

40. Plaintiff seeks to purchase products from companies that make all of their products in the United States, for reasons including patriotism, economic stability in American communities, and the quality of goods made in America compared to other countries.

41. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images made about Pyrex products in general, made by Defendant or at its directions, in digital, print and/or social media, which accompanied Pyrex products including the specific Pyrex items made in China.

42. As a result of the false and misleading representations, all Pyrex products are sold at premium prices, including not less than $20 for one of its measuring cup sets.

43. Plaintiff bought Pyrex products at or exceeding the above-referenced price.

44. Plaintiff paid more for Pyrex products, would have paid less or not have purchased them had she known they were not all made in the United States but that some were made in China and marketed as "Made in the USA."

45. The value of the Pyrex products that Plaintiff purchased was materially less than their value as represented by Defendant, because Plaintiff sought to support a company which made all of its products in the United States, not just some of them.

46. Plaintiff chose between Pyrex products and others represented similarly, but which did not misrepresent or omit their origins of the specific items in question or across its product line.

Class Allegations

47. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Maryland Class:** All persons in the State of Maryland who purchased Pyrex products during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Georgia, West Virginia, Texas, Montana, Idaho, New Mexico, Alabama, Utah, North Dakota, South Dakota, Nebraska, Iowa, Kansas, Mississippi, Arkansas, Alaska, Wyoming and South Carolina who purchased Pyrex products

during the statutes of limitations for each cause of action alleged.

48. Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

49. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

50. Plaintiff is an adequate representative because her interests do not conflict with other members.

51. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

52. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

53. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

Maryland Consumer Protection Act ("MCPA"), Commercial
Law Art., Md. Ann. Code, § 13-101, *et seq.*

54. Plaintiff incorporates by reference all preceding paragraphs.

55. Plaintiff purchased Pyrex products in part because she believed that all Pyrex items were made entirely in the United States of domestically sourced materials.

56. Plaintiff would not have purchased Pyrex products or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

57. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are

9

similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

58. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

59. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose</u>
<u>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

60. The Pyrex products were manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that they were all made in the United States, based on its ubiquitous and decades-long marketing campaigns.

61. Defendant directly marketed the Pyrex products to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

62. Defendant knew the product attributes that potential customers like Plaintiff were seeking, the iconic Pyrex kitchenware products, known for decades as being made in America, across its entire product line, and developed its marketing and labeling to directly meet their needs and desires.

63. The representations about the Pyrex products were conveyed in writing and promised they would be defect-free, and Plaintiff understood this meant they were all made in the United States, based on its ubiquitous and decades-long marketing campaigns.

64. Defendant's representations affirmed and promised that Pyrex products were all

made in the United States, based on its ubiquitous and decades-long marketing campaigns, even though this was false.

65. Defendant described the Pyrex products so Plaintiff believed they were all made in the United States based on its ubiquitous and decades-long marketing campaigns, which became part of the basis of the bargain that they would conform to their affirmations and promises.

66. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Pyrex products.

67. This duty is based on Defendant's outsized role in the market for kitchenware made in the United States, as custodian of the iconic Pyrex brand.

68. Plaintiff recently became aware of Defendant's breach of the Pyrex products' warranties.

69. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

70. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

71. Dozens of customers informed Defendant of its breach of the warranties for the specific Pyrex products and the Pyrex product line in general.

72. All Pyrex products did not conform to their affirmations of fact and promises due to Defendant's actions, not limited to the particular products which were discovered to be made in China and not in the United States.

73. The Pyrex products were not merchantable because they were not fit to pass in the trade as advertised, not fit for the ordinary purpose for which they were intended and did not

conform to the promises or affirmations of fact made on the packaging, container, or label, because they were marketed as if they were all made in the United States, based on its ubiquitous and decades-long marketing campaigns.

74. The Pyrex products were not merchantable because Defendant had reason to know the particular purpose for which they were bought by Plaintiff, because she expected all Pyrex items were made in the United States, based on their ubiquitous and decades-long marketing campaigns, and she relied on its skill and judgment to select or furnish such suitable products.

### Negligent Misrepresentation

75. Defendant had a duty to truthfully represent all Pyrex products, which it breached.

76. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, the custodian of the Pyrex brand, known as a company which makes all of its products in the United States.

77. Defendant's representations regarding all Pyrex products went beyond the specific representations on its packaging and labels, as they incorporated its extra-labeling promises and commitments to being "Made in America" it has been known for.

78. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

79. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

80. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of Pyrex products in general.

### Fraud

81. Defendant misrepresented and/or omitted the attributes and qualities of all Pyrex

products, which were marketed as if they were made in the United States, based on its ubiquitous and decades-long marketing campaigns.

82. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity or deception, through statement and omission, of the representations.

## Unjust Enrichment

83. Defendant obtained benefits and monies because all Pyrex products were not as represented and expected, in that at least some of the Pyrex products were not made in the United States, but in China, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;
2. Awarding monetary, statutory and/or punitive damages and interest;
3. Awarding costs and expenses, including reasonable attorney and expert fees; and
4. Other and further relief as the Court deems just and proper.

Dated:   February 6, 2023

                                                            Respectfully submitted,

                                                            /s/ Spencer Sheehan
                                                            Sheehan & Associates, P.C.
                                                            60 Cuttermill Rd Ste 412
                                                            Great Neck NY 11021
                                                            (516) 268-7080
                                                            spencer@spencersheehan.com


                                                            Reese LLP
                                                            Michael R. Reese*

13

100 W 93rd St Fl 16
New York NY 10025
(212) 643-0500
mreese@reesellp.com

Law Office James Chung
James Chung*
4322 216th St
Bayside NY 11361
(718) 461-8808
jchung_77@msn.com

**Pro Hac Vice* Motion to be Filed